Russell G. Wheeler (RW 8995)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
rwheeler@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff Jennifer Reynoso

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER REYNOSO,<br><br>           Plaintiff,<br><br>   v.<br><br>FMS NEW YORK SERVICES, LLC,<br>           Defendant. | COMPLAINT<br><br>Civil Action No.<br><br>JURY TRIAL DEMANDED |

Plaintiff Jennifer Reynoso, by and through her counsel Charny & Wheeler P.C., brings this Complaint and in support thereof, states as follows.

**Nature of the Case**

1. This is an action for damages and other relief brought pursuant to the whistleblower protections of the New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 740, 741, et seq., based upon Defendant FMS New York Services, LLC's termination of Plaintiff's employment and other adverse employment actions taken in retaliation for Plaintiff having engaged in whistleblower activity protected by those statutes.

**Jurisdiction**

2. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(a)(1), in that Plaintiff is and at all relevant times was a resident of the State of New York, Defendant is and at all relevant

1

times was a resident of the Commonwealth of Massachusetts, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. At all times relevant herein, Defendant committed a tortious act or acts, to wit, the unlawful suspension and termination of Plaintiff's employment in retaliation of Plaintiff having engaged in a protected activity, in violation of NYLL §§ 740 and 741.

4. At all times relevant herein, Defendant's unlawful retaliation against Plaintiff had an impact within the State of New York.

5. Upon information and belief, Defendant has at all relevant times provided medical products and services within the State of New York, including within the Southern District of New York.

6. Upon information and belief, Defendant has at all relevant times contracted to provide medical products and services within the State of New York, including within the Southern District of New York.

7. Upon information and belief, Defendant has at all relevant times derived substantial revenue from providing medical products and services within the State of New York, including within the Southern District of New York.

8. Upon information and belief, at all times relevant hereto, Defendant has derived substantial revenue from interstate and international commerce.

9. At all times relevant herein, Defendant purposefully transacted business within the State of New York, including the Southern District of New York, within the meaning of N.Y. C.P.L.R. § 302(a)(1).

**Venue**

10. Venue is proper pursuant to 28 U.S.C. § 1391(d), in that Defendant has sufficient contacts to subject it to personal jurisdiction within the Southern District of New York if it were a separate State and is accordingly deemed to reside therein.

**Parties**

11. Plaintiff Jennifer Reynoso (herein Plaintiff) is and at all relevant times was an adult female residing in Deer Park, New York.

12. As described herein, Plaintiff was previously employed by Defendant as a Registered Nurse.

13. At all relevant times, Plaintiff performed health care services for and under the control of Defendant in exchange for wages and other remuneration.

14. At all relevant times, Plaintiff was an employee as defined by NYLL §§ 740 and 741.

15. At all times material, Defendant FMS New York Services, LLC was a foreign limited liability company, organized and existing under the laws of the State of Delaware, operating in the State of New York, and registered with the New York Department of State in New York County.

16. At all times material, Defendant's principal place of business was located in Waltham, Massachusetts.

17. At all times relevant times, Defendant did business in the field of medical instruments and services and operated the Suffolk Kidney Center, a clinic providing medical dialysis services in Hauppauge, New York.

18. At all relevant times, Defendant employed one or more employees.

19.     At all relevant times, Defendant provided healthcare services through the Suffolk Kidney Center, a facility that upon information and belief was licensed to do so pursuant to article twenty-eight or thirty-six of the New York Public Health Law.

20.     At all times material, Defendant was Plaintiff's employer as defined by NYLL §§ 740 and 741.

## Material Facts

<u>Plaintiff's Employment with Defendant at the Suffolk Kidney Clinic</u>

21.     In or about 2004, Plaintiff began working for Defendant.

22.     Plaintiff worked for Defendant at a number of locations over the ensuing approximately 17-plus years.

23.     In or around 2018, Defendant promoted Plaintiff to a Clinical Manager role at a Denovo clinic in Queens, New York.

24.     Plaintiff served in this Clinical Manager role for approximately one year, when she voluntarily resigned from the position and left in good standing.

25.     In or about February 2020 Plaintiff began working as a Registered Nurse for Defendant at the Suffolk Kidney Clinic.

<u>Unsafe Conditions at the Suffolk Kidney Clinic</u>

26.     What Plaintiff discovered at the Suffolk Kidney Clinic was unacceptable on nearly every level.

27.     Foremost, the Suffolk Kidney Clinic was woefully understaffed and overbooked.

28.     Plaintiff was routinely the only Registered Nurse on duty, while also serving as the Charge Nurse.

29. While serving as Charge Nurse, Plaintiff had to, among other things, supervise care for all patients, supervise staff, delegate duties to staff, and handle staffing issues in real time.

30. The Suffolk Kidney Clinic would often have as many as 40 patients scheduled for treatment each day.

31. As a result, the Suffolk Kidney Clinic frequently had more than 12 patients receiving care per Registered Nurse present.

32. Plaintiff repeatedly reported to her supervisors that the Suffolk Kidney Clinic was violating what she reasonably believed to be regulations requiring minimum staffing levels at dialysis clinics that required at least 1 Registered Nurse on site per 12 patients being treated.

33. Plaintiff reasonably believed that the Charge Nurse could not count toward this required quota of Registered Nurses.

34. Plaintiff reasonably believed that the foregoing activities, policies, and practices of Defendant violated a law, rule, or regulation.

35. Plaintiff reasonably believed that the foregoing activities, policies, and practices of Defendant posed a substantial and specific danger to the public health or safety.

36. Plaintiff reasonably believed that the foregoing activities, policies, and practices of Defendant constituted an improper quality of patient care and/or improper quality of workplace safety.

<u>Plaintiff's Protected Activity</u>

37. Plaintiff made several complaints about inadequate and/or dangerous staffing levels to several of Defendant's supervisors.

38. For example, Plaintiff complained about staffing levels to a Clinical Manager on or about October 29, 2021.

39. Plaintiff continued complaining about dangerously low staffing levels to supervisors, making at least two complaints per month to Area Manager Eileen Clemmons in November 2021, December 2021, and January 2022.

40. At all relevant times, Clemmons had the authority to direct and control Plaintiff's work performance and to take corrective action regarding Plaintiff's complaints.

41. At all relevant times, Clemmons was Plaintiff's supervisor under NYLL §§ 740 and 741.

42. Plaintiff also routinely raised the issue of unsafe staffing issues during discussions with Clinical Manager Michael Kohn.

43. At all relevant times, Kohn had the authority to direct and control Plaintiff's work performance and to take corrective action regarding Plaintiff's complaints.

44. At all relevant times, Kohn was Plaintiff's supervisor under NYLL §§ 740 and 741.

Low Staffing Levels Contribute to a Crisis

45. On or about February 28, 2022, Plaintiff again told Clinical Manager Kohn that the Suffolk Kidney Clinic was short-staffed.

46. Plaintiff further complained to Clinical Manager Kohn that the staffing levels were too low and that this was compromising patient care.

47. Later the same day (on or about February 28, 2022) a technician called out to Plaintiff because a patient had become unresponsive.

48. Plaintiff was the only unit floor Registered Nurse present at the time and was also serving as the Charge Nurse.

49. Plaintiff attended to the matter as expeditiously as possible, but she was already tending to another patient who required Plaintiff's attention because of another sudden and acute medical issue.

50. Plaintiff had to interrupt caring for the patient she was tending to in order to address this new crisis.

51. This was a direct result of the kind of understaffing that Plaintiff had been complaining about to her supervisors for months.

52. Still, once alerted to this new crisis, Plaintiff promptly and adequately addressed it, checked the patient's vital signs, and called 911.

Defendants Retaliate Against Plaintiff

53. On or about March 2, 2022, Plaintiff was called into Clinical Manager Kohn's office for a meeting.

54. At this meeting, Plaintiff again reiterated to Kohn her complaints about the dangerously short staffing at the Suffolk Kidney Clinic.

55. On or about March 8, 2022, Defendant suspended Plaintiff, claiming that she had supposedly failed to react quickly enough when a patient became unresponsive on or about February 28, 2022.

56. However, as described above, Plaintiff had adequately addressed and dealt with exigencies that arose on or about February 28, 2022.

57. Indeed, upon information and belief, none of the Technicians on duty that evening made any notes in the patient's chart regarding Plaintiff's response time on February 28, 2022, thereby indicating that Plaintiff did nothing wrong.

58. On or about March 25, 2022, Defendant terminated Plaintiff, again invoking the events of on or about February 28, 2022.

59. Indeed, Plaintiff had renewed her complaints about staffing levels and safety the very day she supposedly failed to address a patient event quickly enough.

60. Defendant suspended Plaintiff little more than one week later and then terminated Plaintiff about two weeks later.

61. As such, Plaintiff disclosed to a supervisor an activity, policy, or practice of Defendant that Plaintiff reasonably believed was violated a law, rule, or regulation or that the Plaintiff reasonably believed posed a substantial and specific danger to the public health or safety.

62. Likewise, Plaintiff objected to or refused participate in an activity, a policy, or a practice that she reasonably believed violated a law, rule, or regulation or that the Plaintiff reasonably believed posed a substantial and specific danger to the public health or safety.

63. Plaintiff also disclosed to a supervisor an activity, policy, or practice of the employer or agent that the Plaintiff, in good faith, reasonably believed constituted improper quality of patient care or improper quality of workplace safety.

64. Plaintiff objected to or refused to participate in an activity, policy, or practice of Defendant or an agent of Defendant, in good faith, reasonably believed constituted improper quality of patient care or improper quality of workplace safety.

65. By repeatedly notifying Plaintiff's superiors about these issues for months, Plaintiff afforded Defendant a reasonable opportunity to correct the activities, policies, or practices.

## Allegations as to Damages

66. Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs of this Complaint as if set for the fully herein.

67. Defendant knew or should have known of the retaliatory conduct described above and failed to take corrective measures within its control.

68. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by Defendant's blatantly unlawful and retaliatory adverse employment actions, including Plaintiff's termination.

69. Defendant retaliated against Plaintiff because Plaintiff complained about staffing levels and inadequate quality of patient care.

70. The above are just some of the ways Defendant regularly and continually harassed, discriminated against, and retaliated against Plaintiff while employing Plaintiff.

71. Defendant acted intentionally and intended to harm Plaintiff.

72. Plaintiff was qualified for Plaintiff's position.

73. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

74. Plaintiff will also suffer future pecuniary losses as a result of Defendant's unlawful conduct.

75. Defendant acted maliciously, willfully, and/or wantonly.

76. As such, Plaintiff demands punitive damages.

## As and For a First Cause of Action
### (Retaliation in Violation of Section 740 of the NYLL)

77. Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraph of this Complaint as if set forth fully herein.

78. By the foregoing, Plaintiff disclosed to a supervisor an activity, policy, or practice of Defendant that Plaintiff reasonably believed violated a law, rule, or regulation or that the Plaintiff reasonably believed posed a substantial and specific danger to the public health or safety.

79. By the foregoing, Plaintiff objected to or refused to participate in an activity, a policy, or a practice of Defendant that Plaintiff reasonably believed violated a law, rule, or regulation or that the Plaintiff reasonably believed posed a substantial and specific danger to the public health or safety.

80. Plaintiff afforded Defendant a reasonable opportunity to correct the activities, policies, or practices.

81. Defendant retaliated against Plaintiff, including by suspending and terminating her employment, because Plaintiff disclosed to her supervisors and objected to or refused to participate in such activities, policies, or practices.

82. As a result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including loss of wages and benefits, emotional distress and mental anguish, and attorney's fees and costs.

## As and For a Second Cause of Action
### (Retaliation in Violation of Section 741 of the NYLL)

83. Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraph of this Complaint as if set forth fully herein.

84. By the foregoing, Plaintiff disclosed to a supervisor an activity, policy, or practice of Defendant or of Defendant's agent that the Plaintiff, in good faith, reasonably believed constituted improper quality of patient care or improper quality of workplace safety.

85. By the foregoing, Plaintiff objected to or refused to participate in an activity, policy, or practice of Defendant or of Defendant's agent, in good faith, reasonably believed constituted improper quality of patient care or improper quality of workplace safety.

86. Plaintiff afforded Defendant a reasonable opportunity to correct the activities, policies, or practices.

87. Defendant retaliated against Plaintiff, including by suspending and terminating her employment, because Plaintiff disclosed to her supervisors or objected to or refused to participate in such activities, policies, or practices.

88. As a result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including loss of wages and benefits, emotional distress and mental anguish, and attorney's fees and costs.

### Jury Trial Demand

89. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by NYLL §§ 740 and 741 in that Defendant retaliated against Plaintiff for engaging in protected whistleblower activity and wrongfully subjected Plaintiff to adverse

employment actions, including the suspension and termination of Plaintiff's employment;

B. Issuing an injunction to restrain continued violation of NYLL §§ 740 and 741;

C. Reinstating Plaintiff to the same position held before the retaliatory action, or to an equivalent position, or front pay in lieu thereof;

D. Reinstating Plaintiff's full fringe benefits and seniority rights;

E. Awarding economic damages to Plaintiff for all lost wages, benefits, and other renumeration resulting from Defendant's unlawful conduct and to otherwise make Plaintiff whole for any losses suffered because of Defendant's unlawful employment practices;

F. Awarding Plaintiff punitive damages and/or a civil penalty not exceeding $10,000;

G. Awarding Plaintiff attorneys' fees, costs, and disbursements incurred in the prosecution of the action; and

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful employment practices and conduct.

Dated: Rhinebeck, New York
November 9, 2022

Russell G. Wheeler (RW 8995)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
F - (845) 876-7501
rwheeler@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff